UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JOSE GARCIA (#633342)                                                CIVIL ACTION NO.

VERSUS                                                                          20-785-JWD-EWD

JAMES M. LeBLANC, ET AL.

**OPINION**

This matter comes before the Court for review of the Magistrate Judge's Report and Recommendation, which, pursuant to 28 U.S.C. §§ 1915(e) and 1915A, recommended Plaintiff's claims against James LeBlanc, as well as all claims arising from alleged violations of equal protection, due process related to the original disciplinary proceedings, claims for injunctive relief against Darryl Vannoy, Michael Jack, and Tammy Hendrickson in their individual capacities, and state law claims arising under the Louisiana Constitution Article I, §§ 1, 3, and 20 be dismissed with prejudice for failure to state a claim upon which relief may be granted and that Plaintiff's Eighth Amendment claims regarding the conditions of his confinement be dismissed without prejudice subject to his right to file an amended complaint that cures, if and where possible, the deficiencies of Plaintiff's conditions of confinement claims.[1]  The Report and Recommendation recognized that, if Plaintiff was given an opportunity to amend, he may be able to state a claim regarding the conditions to which he is subjected in "Control Cell Restriction," ("CCR") where he is housed.[2]

---

[1] R. Doc. 7.
[2] R. Doc. 7, pp. 5-7.

After the issuance of the Report and Recommendation, in addition to filing an objection,[3] Plaintiff filed Motions to Supplement and Amend,[4] which attempt to cure the deficiencies of the conditions of confinement claims, as noted in the Report and Recommendation.[5] The Motions to Amend will be granted in part. To the extent amendment is not allowed for conditions claims, those claims will be dismissed *with* prejudice. Accordingly, the Report and Recommendation will be adopted in part and rejected to the extent it recommended dismissal *without* prejudice of the conditions claims, as, due to the amendments, a determination regarding the viability of those claims for screening purposes is now possible.

## I.   Standard of Review for Amendment

Federal Rule of Civil Procedure 15(a) provides the standard by which the Court must evaluate a motion to amend pleadings. In determining whether to grant leave, a court may consider several factors, including, "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment…."[6] As discussed below, amendment of the majority of Plaintiff's claims would be futile, so Plaintiff will not be permitted to amend the suit to add those futile claims.[7]

---

[3] R. Doc. 10.

[4] In actuality, both proposed pleadings are proposed amended, not supplemental, complaints because the conditions existed prior to the filing of the original complaint and did not arise after the filing of the initial complaint. *Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 302 (5th Cir. 1989) quoting 6 C. Wright & A. Miller, Federal Practice & Procedure, § 1504 at 540 (1971) ("[a]mended and supplemental pleadings differ in two respects. The *former relate to matters that occurred prior to the filing of the original pleading and entirely replace the earlier pleading; the latter deal with events subsequent to the pleading to be altered* and merely represent additions to or continuations of the earlier pleading.").

[5] R. Docs. 11 & 12.

[6] *Rhodes v. Amarillo Hosp. Dist.*, 654 F.2d 1148, 1153 (5th Cir. 1981) (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1962)).

[7] Though generally "[a] party may amend its pleading once as a matter of course," to allow amendment for the claims discussed herein that do not state a claim would be futile because those claims would then merely be subject to dismissal pursuant to 28 U.S.C. §§ 1915(e) and 1915A.

## II. Original Claims

With respect to the conditions of confinement claims, Plaintiff previously provided relatively conclusory statements of sleep deprivation, living in fear, being deprived in general, and regarding the existence of the COVID-19 pandemic.[8] Plaintiff has expounded on the conditions to which he is subject in his proposed amended complaints; each condition will be discussed in turn.

## III. Proposed Amended Claims

Plaintiff complains regarding the following conditions in his proposed amended complaints: 23 hour per day cell confinement, limited outdoor recreation, lack of direct library and law library access, limited contact visits, denial of religious services and gatherings, denial of educational and therapy programs, inability to work to earn incentive wages, forced to have meals alone, denial of normal contact with other inmates, Plaintiff is forced to share a cell block with mentally ill prisoners who sometimes scream at night preventing Plaintiff from sleeping, he also has occasional trouble sleeping due to a fear that he will have hot water or human waste thrown on him, and the cell block is "extremely hot."

Although some of these claims are true conditions of confinement claims, others invoke other provisions of the Constitution and federal law., and others do not rise to the level of a colorable federal claim at all  Relative to the true conditions claims, the conditions under which a prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits the unnecessary and wanton infliction of pain.[9] An inmate must establish two elements—one objective, one subjective—to prevail on a conditions of confinement claim.[10] First, he must show

---

[8] R. Doc. 1, p. 6.  Some other conditions were noted in attachments to the Complaint, but the conditions that may rise to the level of a constitutional violation were not sufficiently detailed.  *See* R. Docs. 1-1, 1-2.
[9] *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).
[10] *Arenas v. Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019).

that the relevant official denied him "the minimal civilized measure of life's necessities" and exposed him "to a substantial risk of serious harm."[11] The "alleged deprivation" must be "objectively serious."[12] Second, the prisoner must show "that the official possessed a subjectively culpable state of mind in that he exhibited deliberate indifference" to the risk of harm.[13] "Deliberate indifference is an extremely high standard to meet."[14] "A prison official displays deliberate indifference only if he (1) knows that inmates face a substantial risk of serious bodily harm and (2) disregards that risk by failing to take reasonable measures to abate it."[15] This inquiry is "subject to demonstration in the usual ways, including inference from circumstantial evidence."[16] A "factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."[17]

The Eighth Amendment "does not mandate comfortable prisons, but neither does it permit inhumane ones."[18] At a minimum, prison officials "must provide humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care."[19] They cannot deprive prisoners of the "basic elements of hygiene" or the "minimal civilized measure of life's necessities."[20] Prison conditions cannot inflict "wanton and unnecessary" pain.[21]

To be clear, with respect to the below conditions, the only question before the Court now is whether these conditions violate the Eighth Amendment, as the Magistrate Judge recommended

---

[11] *Id.* (quotation marks omitted).
[12] *Id.*
[13] *Id.* (citations and quotation marks omitted).
[14] *Id.*, quoting *Domino*, 239 F.3d at 756.
[15] *Id.* (quotation marks omitted).
[16] *Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004).
[17] *Id.*
[18] *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).
[19] *Id.*
[20] *Palmer v. Johnson*, 193 F.3d 346, 352-53 (5th Cir. 1999) (quotation marks omitted).
[21] *Id.* at 351.

dismissal of the Eighth Amendment claims without prejudice subject to the Plaintiff's right to amend.[22] The undersigned agrees with the Magistrate Judge's assessment that the conditions in CCR coupled with the length of time Plaintiff has been in CCR have given rise to a liberty interest so as to invoke the protections of the due process clause,[23] but the existence or absence of a liberty interest for purposes of a due process analysis is not synonymous with finding allegations sufficient to state a claim under the Eighth Amendment.[24]

### a. 23 Hours Per Day Cell Confinement and Restricted Outdoor Recreation

Plaintiff complains that he is confined to a cell 23 hours per day and only allowed three hours of outdoor recreation per week.[25] Confinement to a cell for 23 hours per day does not rise to the level of a constitutional violation.[26] Thus, because allowing Plaintiff amend his complaint to bring this claim would be futile, Plaintiff will not be permitted to amend his complaint in this regard.

---

[22] R. Doc. 7.
[23] R. Doc. 7, pp. 9-11.
[24] In other words, deprivations may be sufficiently serious to warrant due process protections but insufficient to constitute a violation of the Eighth Amendment, and deprivations may be of such a nature to constitute a violation of the Eighth Amendment but not of the nature to warrant due process protections. *See Nichols v. Best*, No. 15-2946, 2017 WL 3872488, at *5 (N.D. Ill. Sept. 5, 2017) (exposure to cold may implicate the Eighth Amendment but was not sufficiently atypical to give rise to constitutional due process concerns); *Hopkins v. Klindworth*, 556 Fed.Appx. 497, 499 (7th Cir. 2014) (allegations of cold air seeping through a window stated an Eighth Amendment conditions of confinement claim but not a due process claim). This is because the pertinent inquiry for a due process violation is distinct from the necessary inquiry for an Eighth Amendment claim. With respect to whether a violation of due process has occurred in a heightened confinement case, the first inquiry, simply put, is whether the confinement imposes atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). If so, the second step is to determine whether the procedures attendant upon the deprivation were constitutionally sufficient. *Kentucky Dept. of Corrections v. Thompson*, 409 U.S. 454, 460 (1989). Regarding violations of the Eighth Amendment due to the conditions in which an inmate is housed, the first pertinent inquiry is whether the conditions are so deficient that they deprive the inmate of the minimal civilized measure of life's necessities so as to expose the inmate to a substantial risk of serious harm. *Arenas v. Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019). The second inquiry requires an inmate to show that the defendant possessed a subjectively culpable state of mind. *Id.*
[25] R. Docs. 11, p. 1; 12, p. 2.
[26] *Hill v. Pugh*, 75 Fed.Appx. 715, 721 (10th Cir. 2003) (holding that confinement for 23 hours per day five days a week and 24 hours per day on the remaining two days is not unconstitutional because it shows neither an unquestioned and serious deprivation of basic human needs nor intolerable or shocking conditions)).

Further, Plaintiff has not stated a claim regarding the amount of outdoor recreation he receives. The Fifth Circuit has evaluated claims regrading deprivation of exercise on a case-by-case basis using the following criteria: (1) the size of the inmate's cell; (2) the amount of time the inmate spends locked in his cell each day; and (3) the overall duration of the inmate's confinement.[27] "[P]risoners have no absolute constitutional right to outdoor recreation, so long as some form of exercise is permitted, or, the conditions of confinement, when viewed as a whole, are not violative of the Eighth Amendment…. Even severe restrictions on or complete denials of outdoor recreation are not prohibited by the Constitution."[28] Plaintiff is provided with outdoor exercise three days per week and has failed to provide any facts indicating that the limit on the amount of outdoor exercise he receives has had any detrimental effects to his health.[29] Moreover, the Fifth Circuit has found that one hour of outdoor exercise three days per week is constitutionally sufficient.[30] Because Plaintiff has failed to state a claim of constitutional dimension with respect to his complaints of being in a cell 23 hours per day and enjoying three days of outdoor recreation per week for one hour per day, he will not be permitted to amend to add these claims.

### b. Isolated Nature of Confinement

Plaintiff alleges that he is forced to eat alone and is denied all "normal" human contact with other prisoners.[31] Though in some instances, the harm caused by lack of human contact may

---

[27] *Hewitt v. Henderson,* 271 Fed. App'x. 426, 428 (5th Cir. 2008).
[28] *Wingo v. Johnson*, No. 12-14, 2012 WL 1390684, at *6 (W.D. La. March 21, 2012) (internal quotation marks and citations omitted).
[29] *See, Young v. Gusman*, No. 12-2877, 2013 WL 4648478, at *12 (E.D. La. Aug. 29, 2013) (dismissing a claim regarding limited outdoor exercise because the plaintiff had not sufficiently shown that the limited outdoor exercise had caused any serious health hazard or deleterious effect to his health).
[30] *See McBride v. Bremer*, 990 F.2d 1253, *2 (5th Cir. 1993) ("providing one hour of outdoor exercise three days a week and permit[ting] inmates to move to the dayroom or stay in the cell for the majority of the day" is constitutionally sufficient).
[31] R. Doc. 11, p. 2.

violate the Eighth Amendment,[32] the "isolation" described in this case does not rise to the level of isolation sufficient for an Eighth Amendment violation. Plaintiff is housed in a cell with "open bars" surrounded by other inmates in close enough proximity to throw objects and communicate,[33] and Plaintiff is allowed some contact visits with visitors outside of the prison.[34] Further, Plaintiff does not indicate he has suffered any harm from the "isolation." The "isolation" described by Plaintiff coupled with the fact that he has not suffered any articulable harm resulting from the "isolation" leads the Court to conclude that Plaintiff cannot state a claim in this regard.[35] Thus, he will not be permitted to add this claim.

### c. Sleep Deprivation

Plaintiff avers that he occasionally cannot sleep due to noise caused by other inmates and out of fear that something will be thrown on him while he sleeps.[36] Though sleep is a necessity, Plaintiff's sleep deprivation, as he describes it, stems from the inconvenience of prison life.[37] Further, Plaintiff has failed to point to any injury stemming from the noises or from any sleep deprivation, and courts have found that periodic loud noises that merely annoy, rather than injure,

---

[32] *See Irby v. Litscher*, 2003 WL 23120126, *5 (W.D. Wisc. Sept. 23, 2003) ("harm caused by lack of human contact and sensory stimulation may violate 'contemporary standards of decency' in some instances."); *Quintanilla v. Bryson*, 730 Fed.Appx. 738, 747 (11th Cir. 2018) (allegation of lack of human contact stated claim for deprivation of basic human needs under the Eighth Amendment); *Harvard v. Inch*, 411 F.Supp. 1220, 1239 (N.D. Fl. Oct 24, 2019).
[33] R. Doc. 12, p. 3.
[34] R. Doc. 12, p. 2.
[35] Cases wherein the isolation experienced by an inmate was sufficient to constitute a violation of the Eighth Amendment include circumstances such as solid cell doors, including only a small window to see through, no prisoners in adjacent cells, eliminating the possibility of any communication between prisoners, absolutely no interaction with other inmates, no contact with visitors, resulting in essentially no contact with any person except for incidental contact with corrections officers. *See, e.g., Porter v. Clarke*, 923 F.3d 348, 353 (4th Cir. 2019); *Johnston v. Wetzel*, 431 F.Supp.3d 666, 678-79 (W.D. Pa. Dec. 27, 2019). That is simply not the environment in CCR at LSP.
[36] R. Doc. 11, p. 3.
[37] *Covarrubias v. Foxworth*, No. 17-191, 2018 WL 817322, at *3 (E.D. Tex. Feb. 8, 2018) ("The Court does not dispute the fact that sleep is a necessity; however, the effects of Covarrubias's sleep deprivation, as he describes them, do not demonstrate the wanton and unnecessary infliction of pain. Rather, Covarrubias's symptoms stemming from his lack of sleep—depression, tiredness, poor concentration, headaches, high blood pressure, and restlessness—illustrate the "inconvenience" of the prison's 24-hour schedule.").

do not state a claim of constitutional dimension.[38] Accordingly, Plaintiff will not be allowed to amend the complaint with respect to this claim.

### d. Extreme Heat

Plaintiff's claim that his housing area is "extremely hot with little ventilation" also fails to rise to the level of a constitutional violation.[39] Although exposure to extreme heat is actionable under certain circumstances, Plaintiff's allegations in this case fall short of what is required to establish a constitutional violation, as Plaintiff has only provided the Court with the conclusory allegation of extreme heat. Purely conclusory allegations of excessive heat and inadequate ventilation, without more, fail to implicate a federal constitutional right.[40] Further, Plaintiff has not indicated that he has suffered from any heat related injuries as a result of the "extremely hot" temperatures.[41] Thus, Plaintiff's conclusory claim of extreme heat will not be added through amendment.

### e. Lack of Religious Services

Plaintiff asserts that he has been denied all religious services and gatherings for over six years.[42] It is well-established that prisoners must be accorded "reasonable opportunities" to

---

[38] *Lacy v. Collins*, 66 F.3d 321 (5th Cir. 1995) (citing *Lunsford v. Bennett,* 17 F.3d 1574, 1580 (7th Cir.1994) (a few hours of periodic loud noises that merely annoy, rather than injure, the prisoner does not state a constitutional claim); *Gallegos v. McCubbins*, No. CV 18-4925, 2018 WL 7050581, at *10 (E.D. La. Dec. 10, 2018), *report and recommendation adopted*, No. CV 18-4925, 2019 WL 220202 (E.D. La. Jan. 16, 2019) (dismissing as frivolous claims of sleep deprivation caused by loud noises because the plaintiff failed to allege how the noise posed a substantial risk of serious harm to his health or safety or to allege facts to demonstrate that the existence of noise was intentionally designed to deprive him of sleep).
[39] R. Doc. 12, p. 3.
[40] *See Johnson v. Thaler*, CA No. 99-20222, 1999 WL 1131941, *1 (5th Cir. Nov. 12, 1999) (concluding that the inmate plaintiffs' conclusory "allegations of inadequate ventilation and excessive heat do not entitle them to relief under 42 U.S.C. § 1983"); *Parker v. Smith*, No. 93-5542, 1994 WL 198944, *2 (5th Cir. May 6, 1994) (upholding the frivolous dismissal of a plaintiff's claim that "the ventilation system in the Smith County jail [was] inadequate").
[41] *Johnson v. Texas Board of Criminal Justice*, 281 Fed.Appx. 319 (5th Cir. 2008) (wherein the United States Court of Appeal for the Fifth Circuit upheld a dismissal, as frivolous, of an inmate plaintiff's claims, finding that his allegations regarding extreme heat were "not sufficient to state a constitutional claim" because although he alleged that temperatures were "sometimes uncomfortably hot, he did not allege that he suffered from any heat-related injuries despite being subjected to these conditions numerous times.").
[42] R. Doc. 11, p. 2.

exercise their religious freedom guaranteed by the First Amendment.[43] However, conflicts have arisen between prisoners' exercise of this right and genuine concerns of day-to-day prison administration. "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."[44] The factors examined to determine the reasonableness of prison regulations are as follows: (1) whether there is a rational relationship between the regulation and the legitimate government interest asserted; (2) whether the inmates have alternative means to exercise the right; (3) courts must consider the impact on guards, other inmates, and the allocation of prison resources that would result from accommodating the asserted right; (4) whether ready alternatives exist which accommodate the right and satisfy the governmental interest.[45] Courts must balance the inmates' right to free exercise of religion with the interest of prison officials charged with complex duties arising from administration of the penal system. Prison officials are afforded great deference in carrying out their complex duties.[46]

The *Turner* factors are not weighed equally.[47] The first factor is controlling, and the other factors merely help a court determine if the connection is logical.[48] The Fifth Circuit has held that "[s]ignificant restrictions on [attendance of religious services] must have some relation to legitimate penological interests."[49] Based upon Plaintiff's allegations, read in the light most favorable to him, he has stated a claim with respect to being prevented from attending any religious

---

[43] *Cruz v. Beto*, 405 U.S. 319 (1972).
[44] *Turner v. Safley*, 482 U.S. 78, 89 (1987).
[45] *Id.*, at 89-91.
[46] *O'Lone v. Shabazz*, 482 U.S. 342, 349 (1987). In *O'Lone*, the Supreme Court faced a situation in which policies adopted by prison officials prevented Muslim prisoners from attending Jum'ah services, and the Court held that it would not substitute its judgment on difficult and sensitive matters of institutional administration for the judgment of those charged with the formidable task of running a prison. *Id.* at 353.
[47] *Mayfield v. Texas Dep't. of Criminal Justice*, 529 F.3d 599, 607 (5th Cir. 2008).
[48] *Scott v. Mississippi Dept. of Corrections*, 961 F.2d 77, 81 (5th Cir. 1982).
[49] *Rose v. Woods*, 95 F.3d 53, *1 (5th Cir. 1996) (citing *Muhammad v. Lynaugh*, 966 F.2d 901, 902 (5th Cir. 1992).

services.[50]  Though Plaintiff has not targeted any specific Defendant with respect to this claim, it is reasonable at this juncture to allow the claim to proceed against Vannoy, Jack, and Hendrickson for further development.  Accordingly, Plaintiff's claims arising from the First Amendment and the Religious Land Use and Institutionalized Persons Act[51] ("RLUIPA") should survive.[52]

However, to the extent Plaintiff has attempted to allege RLUIPA claims against these Defendants in their individual capacities, he cannot do so.  RLUIPA does not permit a claim against individual defendants in their individual capacities.[53]  The statute expressly states that RLUIPA's scope is limited to a "program or activity that receives Federal financial assistance."[54]  In this case, the recipient of federal funds is the Louisiana Department of Public Safety and Corrections, not any individual defendant.  Thus, because no individual defendant receives federal financial assistance as that term is used in the statute, Plaintiff cannot maintain a RLUIPA claim against a defendant in his or her individual capacity.[55]  Plaintiff also cannot obtain monetary damages against any Defendant under RLUIPA.[56]  Accordingly, though Plaintiff will be permitted to state claims for violations of the First Amendment and RLUIPA due to the lack of religious services, he will not be permitted to allege claims under RLUIPA against Defendants in their individual

---

[50] Plaintiff has stated this claim under the First Amendment and under RLUIPA, as RLUIPA places a heavier burden than the First Amendment on prison officials to justify a substantial burden on an inmate's religious exercise.  *See Stevens v. Cain*, No. 14-204, 2017 WL 2389978, at *4 (M.D. La. May 23, 2017) ("RLUIPA imposes a higher burden than does the First Amendment."); *Legate v. Stephens*, No. 13-148, 2014 WL 3587981, at *17 (S.D. Tex. June 6, 2014) citing *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008) ("RLUIPA imposes a more stringent standard than that of the First Amendment."). Though a separate analysis regarding RLUIPA may be required in the future, it is unnecessary for screening purposes.
[51] The RLUIPA states that "no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution…unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000cc-1(a).
[52] *See Young v. Ericksen*, 758 F.Supp. 777, 784-85 (E.D. Wis. Dec. 20, 2010) (on summary judgment, material issues of fact existed precluding summary judgment on the plaintiff's claim under RLUIPA that he was not allowed to attend religious services, despite fact that the plaintiff was in segregation for his own safety).
[53] *See* 42 U.S.C. § 2000cc-1.
[54] *Id.* § 2000cc-(b)(1).
[55] *See Stewart v. Beach*, 701 F.3d 1322, 1333-34 (10th Cir. 2012).
[56] *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 330-331 (5th Cir. 2009) (an award of damages under RLUIPA is barred by state's sovereign immunity).

capacities or under the First Amendment and RLUIPA for monetary damages against Defendants in their official capacities. Plaintiff's claims regarding religious services are limited to claims for injunctive relief under RLUIPA and the First Amendment against Defendants in their official capacities and claim for monetary relief under the First Amendment against Defendants in their individual capacities.

### f. Plaintiff's Claims Regarding Lack of Direct Library and Law Library Access, Educational Programs, Opportunities to Earn Wages, and Visitation are Not Conditions Claims

Plaintiff alleges that he does not have direct access to the library and law library like general population inmates.[57] He also complains of limited contact visitation and that he does not have access to educational[58] and rehabilitation programs and the ability to work to earn incentive wages. These complaints do not relate to life's necessities, such as food, medical care, or sanitation and, accordingly, do not implicate the Eighth Amendment.[59] It is also well-settled that a prisoner has no constitutional right to participate in an educational or rehabilitative program[60] and regarding visitation, incarcerated prisoners do not retain any absolute rights of physical association—the

---

[57] R. Docs. 11, p. 1, 12, p. 2.
[58] Plaintiff specifically complains of his inability to attend English classes, but this does not state a claim under the Eighth Amendment for the same reason that access to general education does not state a claim. To the extent Plaintiff has complained that he does not receive a Spanish interpreter for review boards, that will be considered in connection with the due process inquiry.
[59] *Hambrick v. Collins*, 95 F.3d 49, 49 (5th Cir. 1996) ("conditions" complained of by the plaintiff, including denial of access to a law library did not involve deprivations of essentials, so there was no Eighth Amendment violation); *Rivera v. Long*, No. , 2021 WL 326945, at *12 (D. Co. Jan. 31, 2021) (citing *Smith v. Romer*, 107 F.3d 21, 119 WL 57093, at *2 (10th Cir. 1997) (inmate's complaints regarding lack of access to education, recreation, and vocational programs do not relate to life's necessities and fail to satisfy the objective prong of the conditions of confinement test). To the extent Plaintiff meant to bring a claim regarding access to the courts arising from the lack of access to the law library, he has not successfully pled such a claim because there is nothing to suggest he suffered any legal prejudice or detriment. *See Eason v. Thaler,* 73 F.3d 1322, 1328 (5th Cir. 1996) (to prevail on a claim of interference with access to the courts, an inmate claimant must be able to show that he has suffered some cognizable legal prejudice or detriment as a result of the defendant's actions).
[60] *See Moody v. Daggett*, 429 U.S. 78, 88, n. 9 (1976). The Court notes that Plaintiff does not allege he requires any type of rehabilitation or therapy for medical or mental health reasons; rather, his allegations indicate rehabilitation may be required for parole purposes, not any medical need. *See* R. Docs. 11, p. 2; 12, p. 3.

Fifth Circuit has held "that for convicted prisoners '[v]isitation privileges are a matter subject to the discretion of prison officials.'"[61] Further, reduced contact visitation does not deprive Plaintiff of anything essential to life, as further detailed above in relation to the isolated nature of Plaintiff's confinement. Finally, though Plaintiff alleges that La. R.S. 15:828 requires that he have access to the library, education, and rehabilitation,[62] this statute does not in any way guarantee inmates direct access to any library or programs and neither does the Constitution or any other federal law.[63] Therefore, Plaintiff will not be permitted to amend to attempt to state claims regarding these "conditions."

### e. Relief Sought

Plaintiff, in his original Complaint, only sought injunctive relief.[64] In the amended Complaint, Plaintiff also seeks damages.[65] Plaintiff will be allowed to amend his complaint to seek monetary relief against the Defendants, with the following exceptions. Because 42 U.S.C. § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities,[16] Plaintiff will not be permitted to amend to seek monetary damages against the Defendants in their official capacities.[66] Accordingly, any §

---

[61] *Thorne v. Jones*, 765 F.2d 1270, 1273 (5th Cir. 1985) (quoting *Jones v. Diamond*, 636 F.2d 1364, 1376-77 (5th Cir. 1981).
[62] R. Docs. 11, p. 1, 12, p. 2.
[63] The statute specifically states that these programs are subject to "physical custody, and appropriate classification criteria." La. R.S. 15:828.
[64] R. Doc. 1, p. 6.
[65] R. Doc. 12, pp. 7-8. In the relief section of this proposed amended Complaint, plaintiff also purports to ask for relief against additional individuals including, Hooper, LaMartinaire, and Delaney, without alleging any specific facts against them. R. Doc. 12, pp. 6-8. Plaintiff also notes in the objection that these other individuals were meant to be Defendants but fails to allege any specific facts against these individuals; rather, they appear to be named solely as a result of their supervisory roles. Because these individuals have not been listed as Defendants and have not had any specific facts alleged against them, they will not be added to this suit at this time. If Plaintiff would like to add these individuals as Defendants, Plaintiff should file a proposed amended complaint clearly stating how each Defendant is personally responsible for the alleged constitutional deprivations that remain in this suit.
[66] In addition, in *Hafer v. Melo*, 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that an official capacity suit against a state official for monetary damages is treated as a suit against the state and is, therefore, barred by the Eleventh Amendment. *Id.* At 25.

1983 claims asserted by Plaintiff against Defendants in their official capacities for monetary damages are subject to dismissal.[67]  Further, Plaintiff's claims for relief arising from lack of religious services are limited as discussed above in relation to that claim.

Thus, after independently reviewing the entire record in this case and for the reasons set forth in the Magistrate Judge's Report and Recommendation dated November 23, 2021 and the reasons set forth herein,

**IT IS ORDERED** that Plaintiff's Motions to Amend and Supplement[68] are **GRANTED IN PART AND DENIED IN PART**—the Motions are denied to the extent they seek to add any claim except for the following: (1) claims arising under the First Amendment and RLUIPA for injunctive relief against Darryl Vannoy, Michael Jack, and Tammy Hendrickson in their official capacities for the lack of religious services in CCR and (2) claims for monetary relief against Darryl Vannoy, Michael Jack, and Tammy Hendrickson in their individual capacities for due process violations arising from Plaintiff's continued confinement in CCR brought pursuant to the Fourteenth Amendment to the United States Constitutional and Article I, § 2 of the Louisiana Constitution and for violations of the First Amendment arising from the lack or religious services in CCR.  The Clerk of Court is directed to file the amended complaints into the record.

**IT IS FURTHER ORDERED** that Plaintiff's claims against James LeBlanc, as well as all claims arising from alleged violations of equal protection, due process related to the original disciplinary proceedings, claims for injunctive relief against Darryl Vannoy, Michael Jack, and Tammy Hendrickson in their individual capacities, and state law claims arising under the

---

[67] *See Landry v. Lollis*, No. 19-520, 2019 WL 5777755, at *2 (M.D. La. Oct. 8, 2019), *report and recommendation adopted*, No. 19-520, 2019 WL 5777388 (M.D. La. Nov. 5, 2019).
[68] R. Docs. 11 & 12.

Louisiana Constitution Article I, §§ 1, 3, and 20 be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e) and 1915A.

**IT IS FURTHER ORDERED** that all claims regarding the conditions of Plaintiff's confinement arising under the Eighth Amendment and related claims regarding education, rehabilitation, and visitation are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that this matter is referred back to the Magistrate Judge for further proceedings on Plaintiff's remaining claims (*i.e.*, Plaintiff's claims for monetary damages against Darryl Vannoy, Michael Jack, and Tammy Hendrickson in their individual capacities for due process violations arising from Plaintiff's continued confinement in CCR brought pursuant to the Fourteenth Amendment to the United States Constitutional and Article I, § 2 of the Louisiana Constitution and for violations of the First Amendment arising from the lack or religious services in CCR, and Plaintiff's claims for injunctive relief against Darryl Vannoy, Michael Jack, and Tammy Hendrickson in their official capacities for the same violations, as well as for violations of RLUIPA arising from the lack of religious services in CCR).

Signed in Baton Rouge, Louisiana, on <u>January 18, 2022</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**